UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AUBREY MIZELL, JR.                          CIVIL ACTION
and HERMELINDA MIZELL

v.                                          NO. 10-3366
                                            c/w 11-23

SUA INSURANCE COMPANY, ET AL.               SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiff's motion for a new trial. For the reasons that follow, the motion is DENIED.

Background

This personal injury litigation arises from a car crash on Interstate 12 in St. Tammany Parish in which the car being driven by the plaintiff struck a drive shaft that had fallen off of the defendants' 18-wheeler into the plaintiff's lane of travel, causing the plaintiff to lose control of his vehicle and crash into the truck that had stopped on the shoulder.

In the early morning hours of March 1, 2010 Andre D. Thomas was driving a 2002 18-wheeler Freightliner, owned by Rodeo Transportation, LLC, when he began to experience problems with the vehicle, and pulled off the interstate; he parked on the shoulder of I-12 westbound and illuminated the truck's flashing signals.[1]

---

[1] Thomas testified that he heard a loud "boom" before he pulled over to the shoulder. He did not exit the cab to investigate the cause of the "boom" but remained in the cab to call his employer on his cell phone.
   Thomas described the drive shaft as dark brown or black

1

Allegedly, unbeknownst to Thomas, the drive shaft had fallen off his vehicle in the left-hand westbound lane.

Almost immediately after, at around 12:30 a.m., Aubrey Mizell, Jr. was driving his 1999 Chevrolet Cavalier on I-12 when his vehicle struck the drive shaft of the 2002 Freightliner. As a result, the right front tire of Aubrey Mizell, Jr.'s vehicle had a blow out, which caused him to lose control of his vehicle and crash into the Freightliner that Andre Thomas had parked on the side of Interstate 12. Thomas exited the truck and checked on Mr. Mizell. Thomas says that he saw Mizell reaching for something on the passenger side of the vehicle, and Mizell later explained that his cell phone flew from his hand upon impact; he had been speaking to his wife on the phone when the accident happened.[2] He was driving with one hand on the Interstate late at night.

Louisiana State Police Officer Marlena Lee was dispatched to investigate the accident at 1:00 a.m. Officer Lee determined that the mechanical problem that caused Thomas to pull over his 17-wheeler stemmed from a missing drive shaft, the drive shaft struck by Mr. Mizell's car. After Officer Lee completed her investigation, Thomas drove away in the 18-wheeler; the loss of the drive shaft did not disable the truck.

---

in color, approximately two feet in length, and approximately 50-60 pounds in weight.

[2]Thomas allowed Mizell to use his cell phone so that he could call his wife.

At the scene of the accident, Aubrey Mizell, Jr. did not report that he sustained any injuries, and he was not transported to a medical facility as a result of the incident; in fact, Aubrey Mizell, Jr. refused medical care on the scene.[3]

On October 10, 2010 Aubrey Mizell, Jr. and Hermelinda Mizell filed this diversity lawsuit for damages resulting from injuries allegedly caused by the negligence of Rodeo Transportation, LLC and Andre Thomas; SUA Insurance Company, which provided liability insurance coverage to Rodeo Transportation and the Freightliner being driven, was also named as a Louisiana direct action defendant. On December 7, 2010 the Mizells sued the same defendants in state court. The defendants removed the lawsuit to this Court on January 6, 2011, and the cases were consolidated.[4] During the pre-trial conference, the Court determined that the case would be bifurcated into liability and damages phases.

The liability phase of trial began on January 30, 2012 and the evidence was completed on that day. At the close of the evidence, both parties moved for judgment as a matter of law pursuant to

---

[3] Mizell later underwent surgery for a neck injury that he attributed to the accident.

[4] As a result of the accident, Hermelinda Mizell alleged various claims including loss of consortium, grief, mental anguish, and distress. On July 15, 2011 this Court granted the defendants' motion for partial summary judgment dismissing Hermelinda Mizell's claims for grief, mental anguish, and distress; Ms. Mizell reserved her loss of consortium claim. In advance of trial, Ms. Mizell voluntarily dismissed her loss of consortium claim, leaving only Mr. Mizell as plaintiff.

Federal Rule of Evidence 50(a). The Court denied the defendants' motion and took the plaintiff's motion under submission.[5] The next day, on January 31, 2012, counsel made their closing arguments, the Court instructed the jury on the law, the jury was presented with a verdict form, and the jury retired to deliberate.[6] This Court specifically instructed the jury, as to the verdict form, to answer each question one-by-one: advising the jury to review the first question and answer it, and counseling against skipping ahead to read all of the questions. Later that same day, the jury returned a verdict in favor of the defendants, reaching only the first two jury interrogatories:

>      1. Do you find from a preponderance of the evidence that Andre Thomas or Rodeo Transportation, LLC failed to properly inspect and/or maintain the truck in a safe condition, and that either knew or should have known that the drive shaft was defective and created an unreasonable risk of harm to others?
>                    YES_____    NO_____
>      Proceed to Question 2.
>
>      2. Do you find from a preponderance of the evidence that Andre Thomas (a) unreasonably created a hazardous obstruction on the highway or the shoulder, and (b) that Andre Thomas had a duty to warn the plaintiff of the presence of an obstruction, and (c) that Andre Thomas

---

[5] The plaintiff contended in his motion that there was no evidence offered suggesting that Mizell was to blame for the accident such that Mizell was entitled to judgment as a matter of law on the issue of comparative fault.

[6] Included in the jury instructions was an instruction on comparative fault and included in the verdict form was an interrogatory regarding the plaintiff's comparative fault, which would be reached by the jury if it determined that the defendants' fault had proximately caused the plaintiff's accident.

4

> failed to warn the plaintiff of the presence of the obstructions?
> YES_____ NO_____
> If you answered "Yes" to Questions 1 or 2, proceed to Question 3. If you answered "No" to Questions 1 and 2, proceed to the end of this form and skip the remaining question. Date the form, sign it, and return to the Courtroom.

Because the jury answered "NO" to these first two interrogatories, it did not reach the remaining interrogatories, including those concerning causation of injury or comparative fault; rather, in accordance with the instructions, the jury skipped the remaining questions, and the foreperson dated the verdict form, signed it, and the jury returned to the courtroom. Judgement was entered in favor of the defendants and against the plaintiff, dismissing the plaintiff's suit with costs, on January 31, 2012.

The plaintiff now requests a new trial, contending that there was a "very real possibility that the jury considered Mr. Mizell's fault and found him to be completely at fault, when no such evidence supports such a finding."

I.

Rule 59(a) of the Federal Rules of Civil Procedure provides:

> (a) **In General.**
> (1) ***Grounds for New Trial.*** The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court....

Fed.R.Civ.P. 59(a). Rule 59(b) requires that a motion for a new

trial must be filed no later than 28 days after the entry of the judgment. Fed.R.Civ.P. 59(b). Because the Court entered judgment on January 31, 2012, and the plaintiff filed his motion for a new trial 16 days later, the motion for a new trial is timely under Rule 59(b).[7]

If the alleged error committed by the Court is harmless, then a motion for a new trial should be denied:

> Unless justice requires otherwise, no error in admitting or excluding evidence–or any other error by the court or a party–is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise

---

[7]To the extent the plaintiff also intends to invoke Rule 50(b), the deadline is the same where, as here, the jury was discharged on the same day that the Court entered judgment. See Fed.R.Civ.P. 50(b), which provides:
> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment–or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged–the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Perhaps the plaintiff does not seek to renew his motion for judgment as a matter of law because, even if the Court directed entry of judgment as a matter of law on the issue of comparative fault, it would not change the outcome of the case. See infra, at p. 9-10.

disturbing a judgment or order. At every stage of the
proceeding, the court must disregard all errors or
defects that do not affect any party's substantial
rights.

Fed.R.Civ.P. 61.

II.
*A.*

The plaintiff contends that there was no evidence supporting a finding of comparative fault and, therefore, the issue should not have been presented to the jury "due to the strong possibility that the jury would consider Mr. Mizell's own fault when deciding defendants' fault." He points to Officer Lee's testimony that the drive shaft was likely imperceptible due to the surface of the roadway, the lack of lighting, and the dark, oily condition of the drive shaft. He also points to Andre Thomas' description of the drive shaft and Thomas' opinion that it would have been unsafe for him to patrol the road because the drive shaft would have been hard to see and the roadway was dark. Finally, he points to his own testimony at trial; even though he testified that he was on his cell phone at the time of the accident, Mizell insists that there was no evidence to suggest he was distracted from the roadway.[8]

---

[8] Mizell also suggests that, although it was implied by the defense that he had driver fatigue due to a long trip from Daytona Beach, Florida, the evidence showed that Mizell had traveled as a guest passenger. Mizell glosses over, if not ignores, the unrivaled evidence presented at trial that Mizell struck the defendant's truck almost immediately after the truck pulled to the roadway shoulder, making it unrealistic to expect the driver to leave the cab to warn other motorists of anything.

7

The defendants dispute the plaintiff's suggestion that the Court erred in instructing the jury on comparative fault, countering that (1) there was evidence beyond potential cell phone distraction that supported a theory of comparative fault;[9] (2) the Court's instructions concerning both comparative fault and how the jury should review the verdict form, were proper and formulated without any specific objection by the plaintiff; and, in any event, (3) even if the Court somehow erred in instructing the jury on the issue, the error was harmless given that the jury never reached the question of Mizell's own fault in causing his accident because the jury found no liability on the part of the defendants. The Court agrees.

---

[9]The defendants suggest that the only issue Mizell has ever considered to be a component of comparative fault is potential distraction from using his cell phone. However, the defendants point out that, during the trial, the jury was presented with evidence of the plaintiff's 12-14 hour day of road travel; the dark, unlit condition of the roadway; and the plaintiff's use of his cell phone at the moment of impact with an object in the road. Contrary to the plaintiff's suggestion that the verdict was against the evidence, the defendants note that the jury was also presented with evidence of the truck inspections completed by Andre Thomas and Rodeo Transportation, as well as presented with testimony regarding the short length of time between the loss of the drive shaft, the parking of the truck, the lighting of the emergency flashers, the impact of the plaintiff's car with the truck, and the perceived danger of walking along a dark, unlit roadway in the middle of the night.

The defendants contend that, to the extent the issue of comparative fault was raised, it was raised more by counsel for plaintiff in his closing remarks to the jury, including how the defendants did not really expect the jury to find no liability but that they had hoped the jury "would throw them a bone" and find Mizell to be partly at fault.

*B.*

It appears that the plaintiff is simply displeased with the jury's verdict. That is understandable. Both sides took risks and refused to settle their dispute. But Mizell has asserted no grounds for disturbing the jury's verdict. This Court instructed the jury on all aspects of the case, including the manner and order the jury should consider the verdict form. Because "juries are presumed to follow the instructions of the court" (<u>Hollis v. Provident Life and Acc. Ins. Co.</u>, 259 F.3d 410, (5th Cir. 2001)), the plaintiff's motion for new trial has no merit: the Court presumes that the jury did not consider the issue of comparative fault, having only reached the issue of the defendants' fault and concluded that there was no fault. Indeed, that was the clear dynamic of the trial. However, even if the Court (a) accepts the plaintiff's raw speculation that the jury considered the issue of comparative fault; and (b) assumes, for the sake of argument, that the Court erred in including an instruction and interrogatories concerning the issue, any such error seems harmless under the circumstances because the plaintiff has not shown that the outcome of the case would have changed.[10]

If, as the defendants point out, the Court had decided to grant the plaintiff's motion for judgment as a matter on the issue

---

[10]The Court is also obliged to note that Mizell's credibility was placed seriously at issue by the defendants. An issue the jury resolved.

9

of comparative fault,[11] it does not follow that the jury's finding of no fault on the part of the defendants would be altered or that the outcome of the case would change. Significantly, the U.S. Court of Appeals for the Fifth Circuit has addressed this issue when presented with similar circumstances and held that any arguable error on the part of a district court in permitting an issue of comparative fault to go to the jury, and in giving an instruction on comparative fault, is harmless error when the jury ultimately determines that the defendant was not negligent. See Roberts v. Wal-Mart Stores, Inc., 7 F.3d 1256, 1259 (5th Cir. 1993)(rejecting the plaintiffs' contention that the district court erred in denying their motion for judgment as a matter of law on the issue of comparative negligence and in instructing the jury on the issue, noting that there was evidence from which the jury could infer that the injured plaintiff was negligent but that, even assuming the court erred, the error was harmless). Likewise, the Eighth Circuit has also directly addressed this issue, observing:

> Assuming *arguendo*, that the court had erroneously instructed on comparative negligence, it would not have been prejudicial in this case because the jury specifically found that the defendants were guiltless in every particular of negligence charged. We find no error in the court's instruction on the law of comparative negligence but even if there had been and proper objection made thereto, we as a reviewing court would consider it harmless. It could not have affected the

---

[11]As previously noted, Rule 50(b) contemplates that the Court may decide a motion for judgment as a matter of law after the jury returns a verdict.

>   verdict as the rule of comparative negligence could not
>   come into play without a finding that both parties were
>   guilty of negligence.  Since the defendants were found
>   free of some guilt, the harmless error rule would apply.

Lowe v. Taylor Steel Products Co., 373 F.2d 65, 68 (8th Cir. 1967).[12]

In conclusion, the Court finds that the plaintiff has not advanced any argument warranting a new trial.  However, even if this Court indulged the plaintiff's argument that it erred in instructing the jury on comparative fault, any such error was harmless and, therefore, not a ground for granting a new trial, given that the jury returned a verdict of no liability on the part of the defendants.  Accordingly, the plaintiff's motion for a new trial is DENIED.

New Orleans, Louisiana, March 5, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[12] The defendant also invokes two unpublished Fifth Circuit opinions.  See Cranford v. Morgan Southern, Inc., 421 Fed.Appx. 354, 357 (5th Cir. April 5, 2011)(unpublished)(determining that the district court did not abuse its discretion in refusing to provide a requested jury instruction on the limits of defendant's invocation of the Good Samaritan defense as a defense to the defendant's failure to place reflective triangles on the roadway; the requested instruction, which would only come into play if the defendant had created or left a situation created by him through his own negligence, was mooted by the jury's finding that the accident was not caused by that defendant's negligence); see also Colley v. CSX Transp., Inc., 376 Fed.Appx. 387 (5th Cir. April 26, 2010)(unpublished)(even assuming error in instruction regarding apportionment of fault, any error was harmless when the jury in fact returned a verdict of no liability, which left no fault to apportion).